1
2
3
4          UNITED STATES DISTRICT COURT
5          EASTERN DISTRICT OF WASHINGTON
6
7  ISMAEL A. TAFOLLA,                    No. 1:15-CV-03077-JTR
8
            Plaintiff,                   ORDER GRANTING
9                                        DEFENDANT'S MOTION FOR
10              v.                       SUMMARY JUDGMENT
11  CAROLYN W. COLVIN,
12  Commissioner of Social Security,
13
            Defendant.
14

15       **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF
16  No. 17, 18.  Attorney David M. Church represents Ismael Tafolla (Plaintiff);
17  Special Assistant United States Attorney Richard M. Rodriguez represents the
18  Commissioner of Social Security (Defendant).  The parties have consented to
19  proceed before a magistrate judge.  ECF No. 5.  After reviewing the administrative
20  record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for
21  Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.
22                        **JURISDICTION**
23       Plaintiff filed applications for Supplemental Security Income (SSI) and
24  Disability Insurance Benefits (DIB) with a protective filing date of March 8, 2012,
25  alleging disability since January 30, 2011, due to knee problems, migraines,
26  diabetes, and tail bone problems.  Tr. 216, 229.   The applications were denied
27  initially and upon reconsideration.  Tr. 107-111, 113-125.  Administrative Law
28  Judge (ALJ) Virginia M. Robinson held a hearing on July 31, 2013, at which

Plaintiff, represented by counsel, and vocational expert, Kimberly Mullinax, testified. Tr. 24-68. The ALJ issued an unfavorable decision on September 13, 2013. Tr. 395-406. The Appeals Council denied review on April 22, 2015. Tr. 1-6. The ALJ's September 13, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 18, 2015. ECF No. 1, 7.

### STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 38 years old at the alleged date of onset, January 30, 2011. Tr. 182. He completed the eleventh grade in 1990 and received training as a forklift driver in August of 2011. Tr. 31, 230. Plaintiff has past work as a forklift operator, dishwasher, prep cook, and sanitation in a slaughterhouse. Tr. 34-36. Plaintiff worked in September and November of 2011, after the alleged date of onset, as a forklift operator. Tr. 32, 219. Plaintiff received unemployment insurance benefits from the third quarter of 2011 through the second quarter of 2012. Tr. 212-213.

At the administrative hearing, Plaintiff described visual impairments, chronic headaches, left knee problems, and diabetes. Tr. 36, 45, 51, 57. He testified that he had almost no vision in his right eye and wears prescription glasses. Tr. 36. Following a surgery in February of 2013, he stated that he has triple vision. Tr. 41. Plaintiff testified that he has headaches "[a]ll the time," which means "from when I get up until I go to sleep." Tr. 47. The headaches are worse, feeling like a hangover, while watching TV or reading. Tr. 48-49. When he gets a worse headache, he takes Tylenol, "I take three in the morning, I take three at lunch, I take three at night when I got to bed." Tr. 48. He further testified

that the Tylenol worked "to a point.  I mean, I first started out small and now I'm using three.  So, right now they're helping, but they - - sometimes they do and sometimes they don't."  *Id*.  When he gets a worse headache, he has to lay down for about three hours.  Tr. 50.  He testified that he had these headaches when he was working and the headaches remained the same, except "now that I had the surgery I get deeper headaches."  *Id*.  When asked "how did that work out with your work if you needed to lie down that much?" Plaintiff responded "I had to just take Tylenol or something - - Tylenol pretty much will - - or Ibuprofen."  *Id*.  He testified that he experiences pain in his left knee and the pain has spread to his heal and his hip.  Tr. 52.  He stated he had been having trouble with his knee since 2003 and he was taking tramadol and Vicodin for the knee pain at the time of the hearing.  Tr. 53.  As for his diabetes, he testified that he had been experiencing tingling in his feet for the last two years.  Tr. 57.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 13, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 30, 2011, the alleged date of onset.  Tr. 397.

At step two, the ALJ determined Plaintiff had the following severe impairments:  degenerative disc disease, osteoarthritis, left knee meniscal tear and anterior cruciate ligament sprain, obesity, and loss of visual acuity.  Tr. 397.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 399.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following restrictions:

> I find that the claimant has the residual functional capacity to occasionally lift 20 pounds and frequently lift or carry up to 10 pounds. He can stand or walk for approximately six hours and sit for approximately six hours per eight-hour workday with normal breaks. The claimant can occasionally kneel, crouch, crawl, and climb ramps and stairs.  He can frequently balance or stoop.  The claimant should never climb ladders, ropes or scaffolds.  He should avoid concentrated exposure to extreme cold and excessive vibration.  The claimant should avoid exposure to workplace hazards such as dangerous machinery and unprotected heights and should not operate heavy equipment.  He should not perform tasks that entail fine detail work such as working with beads or fine print.

Tr. 400.  The ALJ concluded that Plaintiff was not able to perform his past relevant work.  Tr. 404.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual function capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, packing line worker, and housekeeper/cleaner.  Tr. 405.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 30, 2011, through the date of the ALJ's decision, September 13, 2013.  Tr. 406.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

standards.  Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's testimony about the severity of his symptoms; (2) failing to find Plaintiff's headaches, diabetes, and tailbone pain severe at step two; (3) failing to accord proper weight to the opinions of treating and examining physicians; (4) failing to give proper weight to lay witness testimony; and (5) presenting a hypothetical to the vocational expert which failed to account for all of his limitations.

## DISCUSSION

### A.    Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 17 at 14-18.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of his symptoms.  Tr. 401.  The ALJ reasoned that Plaintiff was less than credible because his symptom reporting was contrary to (1) the objective medical evidence, (2) Plaintiff's reported and demonstrated activities of daily living, and (3) Plaintiff's receipt of unemployment benefits.

### 1.    Contrary to the objective medical evidence

The ALJ's first reason for finding Plaintiff less than credible, that Plaintiff's symptoms are not supported by objective medical evidence, Tr. 401, is a specific,

clear, and convincing reason to undermine Plaintiff's credibility when combined with the ALJ's third reason for finding Plaintiff less than fully credible.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff argues that the ALJ's finding regarding Plaintiff's statements being inconsistent with the medical evidence is not specific enough to meet the standard set forth in *Lester*. ECF No. 17 at 15. In her decision, the ALJ summarized Plaintiff's testimony, found that it was inconsistent with objective medical evidence, and set forth the medical evidence that was contradictory to Plaintiff's testimony. Tr. 401-402. Therefore, the ALJ properly supported her determination and there is no error in the ALJ's finding that Plaintiff's symptoms reports are inconsistent with the objective medical evidence.

### 2. Activities of Daily Living

The ALJ's second reason for finding Plaintiff less than credible, that Plaintiff's activities cast doubt on his alleged limitations is not a specific, clear, and convincing reason to undermine Plaintiff's credibility. Tr. 401.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ noted that Plaintiff reported being able to clean up around the house, feed the dogs, water the lawn, wash dishes, vacuum, wash clothes, cook, make the bed, clean the restroom, and do the grocery shopping, and found that "[t]he claimant's ability to perform these tasks supports the residual functional capacity as determined." Tr. 401-402. In her decision, the ALJ never addressed if these activities were contradictory to Plaintiff's other testimony or whether these activities were transferable to the workplace. As such, the ALJ's rationale falls short of the requirement in *Orn*. Therefore, the ALJ's reliance on Plaintiff's activities of daily living does not support an adverse credibility finding and is in error.

### 3.    Unemployment Insurance

The ALJ concluded that Plaintiff's receipt of unemployment compensation during the first and second quarter of 2012 revealed that Plaintiff certified that he was able to work and, thus, was contrary to his application for SSI and DIB. Tr. 211-212, 401. Plaintiff asserts it was legal error for the ALJ to rely on his receipt of unemployment benefits as support for an adverse credibility determination. ECF No 17 at 15-16.

In *Carmickle v. Comm'r*, the ALJ "gave less weight to [the claimant's] testimony because he received unemployment benefits during the time he allege[d] disability." 533 F.3d 1155, 1161 (9th Cir. 2008). The Ninth Circuit held that this finding was not supported by substantial evidence: "while receipt of unemployment benefits can undermine a claimant's alleged inability to work full time, the record here does not establish whether [the claimant] held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations." *Id.* at 1161–62 (citations omitted).

At the July 31, 2013, hearing, Plaintiff testified that he had received unemployment insurance benefits in 2011 and 2012. Tr. 38. Plaintiff also testified that he looked for part-time and full-time jobs, including janitorial and warehouse

sorting jobs.  Tr. 38-39.  He testified that he never received an interview for any of the applications.  Tr. 39.  The record contains a computer generated report described as: "New Hire, Quarter Wage, Unemployment Query (NDNH)" that indicates Plaintiff received unemployment income from the third quarter of 2011 through the second quarter of 2012.  Tr. 211-212.  Additionally, Plaintiff worked full time as a forklift operator from September to November of 2011, during the period he held himself out as employed.  Tr. 219-220.

In this case, the ALJ concluded that Plaintiff's acknowledgement that he received unemployment benefits and his testimony that he was looking for janitorial and warehouse sorting jobs was enough to discredit his claim of disability:

> He subsequently received unemployment benefits during the first and second quarter of 2012 (10D).  The claimant testified that he was looking for janitorial and warehouse sorting jobs during that time.  I note that a janitorial job would typically entail at least light exertional demands and he apparently believed he could perform this work.

Tr. 401.  Unlike *Carmickle,* Plaintiff testified under oath that he was looking for both part-time and full-time jobs and that in filing for unemployment benefits that he certified he was able to work full time.  Tr. 39.  As such, the ALJ's finding that Plaintiff's receipt of unemployment benefits as a basis for his adverse credibility finding was supported by substantial evidence, and, therefore, was not in error.

In conclusion, the ALJ provided specific, clear and convincing reasons to support her determination that Plaintiff was less than fully credible.  *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the

. . . error was inconsequential to the ultimate nondisability determination").

**B.    Step Two**

Plaintiff argues that the ALJ erred by finding that Plaintiff's headaches, diabetes, and tailbone pain were not severe impairments at step two.  ECF No. 17 at 13-14.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1290 (internal quotation marks omitted).  A claimant's own statement of symptoms alone will not suffice.  *See* 20 C.F.R. §§ 404.1508, 416.908.

**1.    Headaches**

The ALJ found Plaintiff's headaches nonsevere because Plaintiff was able to work with the headaches without the need for breaks, the headaches were managed with over-the-counter medication, and while the headaches had worsened in the last six months, there was no evidence that the exacerbated headaches would last a full twelve months.  Tr. 398-399.

At the hearing, Plaintiff testified that he experienced headaches "[a]ll the time," which means "from when I get up until I go to sleep."  Tr. 47.  The headaches are worse, feeling like a hangover, while watching TV or reading.  Tr. 48-49.  When he gets a worse headache, he takes Tylenol, "I take three in the morning, I take three at lunch, I take three at night when I got to bed."  Tr. 48.  He further testified that the Tylenol works "to a point.  I mean, I first started out small and now I'm using three.  So, right now they're helping, but they - - sometimes

they do and sometimes they don't." *Id*. When he gets the worse headaches, he has to lay down for about three hours. Tr. 50. He testified that he had these headaches when he was working, and the headaches remained the same, except "now that I had the surgery I get deeper headaches." *Id*. When asked "how did that work out with your work if you needed to lie down that much?" Plaintiff responded "I had to just take Tylenol or something - - Tylenol pretty much will - - or Ibuprofen." *Id*.

The medical evidence included a consultative examination completed by Dr. Pellicer, in which Plaintiff reported that his headaches began after a 2008 assault where he was struck in the head and lost consciousness. Tr. 271. He further reported:

> After this his headaches got worse. He has pain every day although it comes and goes. When the headache pain is there it lasts about two hours in his 8/10. Ibuprofen helps, dark helps. The problems with his vision seemed to increase his headaches. Waking up in the morning seems to bring on the headaches.

*Id*. Dr. Jackson completed a Headaches Residual Functional Capacity Questionnaire on May 23, 2013. Tr. 374-376. On the form, Dr. Jackson opined that Plaintiff would need a fifteen to twenty minute breaks every hour to two hours, he was limited to low stress jobs; he was limited to light exertional work; he was limited to sitting for two hours and standing for ten to fifteen minutes at a time with a daily maximum of less than two hours of standing and laying/reclining and about two hours of sitting; and he was limited to walking less than a block without rest or severe pain. Tr. 375-376. Additionally, Dr. Jackson opined that Plaintiff would miss three of four days of work each month as a result of his impairments and treatments. Tr. 376.

Because the ALJ found Plaintiff to be less than fully credible, as discussed above, Plaintiff's testimony and his statements to Dr. Pellicer are not substantial evidence to support a finding that the headaches are a severe impairment at step

two.  Likewise, the ALJ gave little weight to the opinion of Dr. Jackson, which was supported by specific and legitimate reasons.  *See infra.*  As such, the ALJ's decision was supported by substantial evidence and free of legal error.

### 2.    Diabetes

The ALJ found Plaintiff's diabetes nonsevere because the medical evidence did not establish that he had neuropathy.  Tr. 399.  Plaintiff argued that the medical record supports a finding that the diabetes is severe at step two due to the presence of foots ulcers and macular edema in the right eye.  ECF No. 17 at 13.

To support the argument of the presence of foot ulcers, Plaintiff cites to a May 16, 2013, evaluation by Dr. Jackson.  ECF No. 17 at 13.  In that report, the diabetes is defined as "uncomplicated" and "stable," and states there were no foot ulcers, "[p]ertinent negatives include foot ulcers."  Tr. 365.  In the her decision, the ALJ made repeated citations to the record supporting her finding that the diabetes did not result in any limitations with the feet.  Tr. 399.  She acknowledged that on September 14, 2012, Dr. Pellicer fond some decreased sensation over Plaintiff's toes and tingling in his left lower leg, but there was no evidence of neuropathy.  Tr. 275.  In her September 27, 2012, opinion, Dr. Jackson rated Plaintiff's diabetes as a one, meaning it had "[n]o interference with the ability to perform one or more basic work-related activities."  Tr. 310.  A February 15, 2013, report referred to the diabetes as "uncomplicated," with an A1c at the Plaintiff's goal of 6.  Tr. 290.  The ALJ's determination is supported by substantial evidence.  The ALJ did not commit error in finding that the diabetes did not result in any physical impairment in the feet.

Additionally, Plaintiff cites to ophthalmology records as evidence that the diabetes results in visual limitations.  ECF No. 17 at 13.  But, the ALJ specifically found that "[t]he diabetes causes no external restriction.  To the extent that the diabetes has affected the claimant's vision, I have considered the vision loss in formulating the residual functional capacity."  Tr. 399 n.1.  Additionally, the ALJ

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

considered Plaintiff's vision loss in steps four and five in the functional limitation of "[h]e should not perform tasks that entail fine detail work such as working with beads or fine print." Tr. 400.

Here, the ALJ did not commit reversible error by not considering Plaintiff's diabetes as severe in step two based on visual limitations because she considered any visual impairment resulting from Plaintiff's diabetes in the residual functional capacity assessment. *See, e.g., Burch*, 400 F.3d at 682-683.

### 3. Tailbone Pain

The ALJ finds Plaintiff's complaints of tailbone pain as nonsevere because there was no imagining evidence and the existence of pain is a symptom and not an impairment. Tr. 399. Plaintiff argues that Dr. Pellicer's opinion limiting Plaintiff "to sit[ing] for less than 6 hours cumulatively in an 8 hour day with more frequent breaks due to tailbone pain," is sufficient to support a finding that the tailbone pain is severe. Tr. 276, 399. Dr. Pellicer's limitation is based on Plaintiff's report that "he has constant pain in his tailbone area when he sits for more than 15 min.; the pain is 6/10." Tr. 272. The ALJ found Plaintiff less than fully credible, as discussed above, and gave little weight to Dr. Pellicer's opinion, as discussed below. Therefore, there is not substantial evidence in the record to support the existence of an impairment. *See* 20 C.F.R. §§ 404.1508, 416.908 (a claimant's own statement of symptoms alone will not suffice in establishing the existence of an impairment).

In conclusion, the ALJ did not error in finding that Plaintiff's headaches, diabetes, or tailbone pain were severe impairments at step two.

## C. Evaluation of Medical Evidence

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by treating physician, Caryn Jackson, M.D., and examining physician, Mary Pellicer, M.D. ECF No. 17 at 8-13.

In weighing medical source opinions, the ALJ should distinguish between

three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id.* at 830-831.

### 1. Caryn Jackson, M.D.

Dr. Jackson provided three separate opinions and the ALJ provided little weight or no weight to all of the opinions. Tr. 402-404. Plaintiff asserts that in rejecting Dr. Jackson's opinions, the ALJ cited generally to medical evidence and Plaintiff's testimony and that the ALJ's reliance on Plaintiff's work in 2011 cannot support her rationale because the work did not meet the level of substantial gainful activity. ECF No. 17 at 11.

On September 27, 2012, Dr. Jackson completed a Physical Functional Evaluation form from the Washington State Department of Social and Health Services limiting Plaintiff to sedentary work for twelve months. Tr. 311. The ALJ

gave this opinion "little weight" because it "was predicated on left knee pain.  Pain is a symptom rather than an impairment."  Tr. 402.  The ALJ noted that records showed that Plaintiff had a normal gait, normal strength, and no laxity in the knee and that the knee injury arose in 2003 and Plaintiff continued to work at a greater than sedentary exertional level.  Tr. 402-403.

Here the ALJ's first reason, that the limitation was due to left knee pain and pain is a symptom and not an impairment, is not a specific and legitimate reason to discredit Dr. Jackson's opinion.  The ALJ has already found that the left knee meniscal tear and anterior cruciate ligament sprain a severe impairment at step two, meaning that it causes significant limitations in basic work functions.  Tr. 397.  Additionally, the ALJ found that Plaintiff's left knee meniscal tear and anterior cruciate ligament sprain "could reasonably be expected to cause some of the alleged symptoms."  Tr. 401.  As such, the ALJ has already determined that Plaintiff's knee impairment would likely result in some knee pain and thus result in some limitation in basic work functions.  Therefore, the ALJ's rationale for rejecting Dr. Jackson's opinion, that pain is a symptom and not an impairment, is not a specific and legitimate reason.  Nonetheless, this error is harmless because the remaining reasons provided by the ALJ for rejecting the September 27, 2012, opinion are legally sufficient.

The ALJ's second reason for rejecting the opinion, that the opinion was inconsistent with Plaintiff's ability to work at a level greater than sedentary since the initial injury in 2003, meets the specific and legitimate standard.  Plaintiff testified that his knee pain was worse at the time of the hearing when compared to the 2003 injury date, Tr. 53, but the medical evidence does not establish that there has been a progressive worsening of the impairment or an exacerbation of symptoms.  Dr. Greenwald states that Plaintiff's MRI showed an "old ACL injury without any residual tissue."  Tr. 363.  The MRI performed on December 22, 2003, matches the MRI performed on December 21, 2012, and does not indicate a

worsening of the impairment.  Tr. 291.  As such, the ALJ's reason is supported by substantial evidence and is a specific and legitimate reason to support the rejection of the September 27, 2012, opinion.

On May 13, 2013, Dr. Jackson completed a Headaches Residual Functional Capacity Questionnaire.  Tr. 374-376.  On the form, Dr. Jackson opined that Plaintiff would need a fifteen to twenty minute break every hour to two hours, he was limited to low stress jobs; he was limited to light exertional work; he was limited to sitting for two hours and standing for ten to fifteen minutes at a time with a daily maximum of less than two hours of standing and laying/reclining and about two hours of sitting; and he was limited to walking less than a block without rest or severe pain..  Tr. 375-376.  Additionally, Dr. Jackson opined that Plaintiff would miss three of four days of work each month as a result of his impairments and treatments.  Tr. 376.  The ALJ gave this opinion "limited weight" because Plaintiff testified that he was able to work in the past despite headaches, which he dealt with by taking Tylenol and ibuprofen, his left knee injury occurred a decade ago and he was able to work on the knee in the past, he was able to work as a forklift operator in 2011, he was looking for janitorial work, and Dr. Jackson did not cite any objective evidence or provide any rationale for her opinion.  Tr. 403-404.

The fact that a treating physician's opinion is inconsistent with a claimant's alleged level of activity is a specific and legitimate reason to reject the opinion. *Rollins*, 261 F.3d at 856.  Here, Plaintiff was able to work at a forklift operator during the relevant time period.  Plaintiff asserts that the 2011 work cannot be relied upon because it was not performed at substantial gainful activity levels. ECF No. 17 at 11.  But, Plaintiff stated that the work was eight hours a day, five days a week and lasted from September to November of 2011.  Tr. 218-219. Plaintiff testified this work was with Snokist Growers, and the earnings records shows that Snokist Growers paid Plaintiff $780.00 in the third quarter of 2011 and

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

$2,144.00 in the fourth quarter of 2011. Tr. 32, 211. The ALJ concluded that these earnings appeared by be below the presumptive threshold for substantial gainful activity. Tr. 397. Regardless of Plaintiff's earnings, he testified he was able to complete the work without the need for additional breaks and by taking only Tylenol. Tr. 50. Additionally, he asserted that the job ended for reasons other than his impairments. Tr. 229. Therefore, the ALJ's finding is supported by substantial evidence and is a specific and legitimate reason to reject the May 13, 2013, opinion.

Additionally, the ALJ cited that Dr. Jackson did not cite any objective evidence or provide any rationale for her May 23, 2013, opinion. Tr. 403. An ALJ may discredit a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole. *Batson*, 359 F.3d at 119. The Headaches Residual Functional Capacity Questionnaire is a three page form with a total of twenty-five questions and Dr. Jackson did not reference objective medical testing in her responses. Tr. 374-376. Additionally, a review of Dr. Jackson's treatment records shows that she included a reference to migraine headaches in Plaintiff's history, but she never treated Plaintiff for chronic headaches. Tr. 290-308, 365-368, 382-384. As such, the ALJ's determination is supported by substantial evidence.

On July 5, 2013, Dr. Jackson completed a Drug and Alcohol Questionnaire, in which she opined that "[m]y patient is currently not using drugs and/or alcohol and remains disabled." Tr. 253. The ALJ gave this opinion "no weight" because whether or not the Plaintiff is disabled is an administrative finding and an issue reserved to the Commissioner. Tr. 404. Additionally, the ALJ found that Dr. Jackson did not provide any rationale in support of her opinion. *Id.*

While the ALJ is accurate in her assertion that the issue of whether a claimant is 'disabled' is a question reserved to the Commissioner, the ALJ must still provide legally sufficient reasons to reject the opinion. *Matthews v. Shalala*,

10 F.3d 678, 680-681 (9th Cir. 1993).

Here, the ALJ provided a specific and legitimate reason to reject the July 5, 2013, opinion, that Dr. Jackson did not provide any rationale in support of her opinion. *See Batson*, 359 F.3d at 119 (an ALJ may discredit a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole). This opinion consists of a single box checked with no explanation or citation to medical records. Tr. 253.

In conclusion, the ALJ provided specific and legitimate reasons to reject all of Dr. Jackson's opinions.

### 2. Mary Pellicer, M.D.

On September 14, 2012, Dr. Pellicer completed a consultative examination and opined that Plaintiff was able to stand and walk for two hours in an eight-hour day with frequent breaks due to chronic left knee pain; he was able to sit for less than six hours in an eight-hour day with more frequent breaks due to tailbone pain; he did not require the use of assistance devices; he was capable of lifting and carrying ten pounds occasionally due to chronic left knee pain; he was able to bend occasionally but could not squat, crawl, kneel or climb due to chronic left knee pain; he had no manipulative restrictions other than those caused by Plaintiff's visual problems; he was able to hear, speak, and travel independently and do all the necessary daily self-care activities; he was unable to drive; and he had an almost complete loss of vision in the right eye, which would restrict a number of activities. Tr. 276. The ALJ gave "little weight" to this opinion because Plaintiff injured his knee a decade ago and was able to perform work despite the impairment and on March 5, 2013, Plaintiff had a normal gait, normal strength, and no laxity. Tr. 402. Additionally, the ALJ noted that Plaintiff had normal strength in the upper extremities and only mild spondylosis and the ALJ did not determine the tailbone impairment to be severe. *Id*.

Plaintiff argues that the ALJ failed to articulate specific and legitimate

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

reasons for rejecting Dr. Pellicer's opinion and notes that in the March 5, 2013, report Alan G. Greenwald, M.D., advised Plaintiff of the possibility of an ACL reconstruction and that he believed Plaintiff's history of left knee pain that was aggravated by standing and walking. ECF No. 17 at 12. In the March 5, 2013, report, Dr. Greenwald does state "I certainly believe his history. I explained that he could have an ACL reconstruction," and Plaintiff reports that the pain in his left knee has a severity level of eight and is "aggravated by walking and standing." Tr. 363, 360. But, the objective exam showed a normal gait, normal patella position, no crepitation, a negative in all laxity testing, and an active range of motion of 128 degrees in the left knee. Tr. 362-363. As such, there is evidence to support the ALJ's determination and Plaintiff's argument. Therefore, the ALJ's determination will not be disturbed. *Tackett*, 180 F.3d at 1097 (if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ). As such, the ALJ did provided a specific reason to reject Dr. Pellicer's opinion when she cited Dr. Greenwald's March 5, 2013 report.

**D.    Lay Witness Testimony**

Plaintiff's roommate, Rodney Steve Albin, provided a statement on July 29, 2013, in which he noted Plaintiff's inability to read due to poor eyesight, Plaintiff's inability to spend time on the computer or watch TV except for very short periods of time, and Plaintiff's practice of taking pain killers and often lying down due to headaches. Tr. 256. The ALJ gave this statement "some weight," but noted that Plaintiff "was able to work in the past without lying down or taking unscheduled breaks despite the headaches, which he indicated had occurred all the time." Tr. 404.

An ALJ is required, however, to consider evidence from "other sources," including the evidence from family and friends, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232; 20 C.F.R. §§ 404.1513(d), 416.913(d). To discount they testimony of a lay whiteness, an ALJ must give

ORDER GRANTING DEFENDANT'S MOTION . . . - 19

reasons that are "germane" to each whiteness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ did not totally discount Mr. Albin's testimony, giving it "some weight."  Tr. 404.  The ALJ's reason for providing limited weight, that Plaintiff was able to complete his work as a forklift driver without the need to take breaks, is supported by substantial evidence.  *See Supra.*  Therefore, the ALJ provided an adequate germane reason.

**E.   Hypothetical Question to Vocational Expert**

Plaintiff argues that the ALJ failed to make a proper step five determination because the hypothetical provided to the vocational expert contained an incomplete residual functional capacity assessment due to the ALJ's errors at step two, in evaluating opinion evidence, and in credibility determinations.  ECF No. 17 at 19-20.

At the hearing, the ALJ presented a hypothetical to the vocational expert which matched the residual functional capacity assessment set forth in the ALJ's decision.  Tr. 60-64.  The vocational expert testified that a person with those limitations were not capable of performing Plaintiff's past relevant work, but could perform the occupations of assembler production, packing/line worker, cleaner/housekeeping.  Tr. 62, 64.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating a residual functional capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

Plaintiff asserts that the hypothetical presented to the vocational expert was

incomplete because the ALJ did not include limitations set forth by Dr. Jackson. *Id*. at 20. Plaintiff further asserts that because the residual functional capacity that was presented to the vocational expert at the hearing did not contain all of Plaintiff's limitations, the vocational expert's testimony has no evidentiary value. ECF No. 17 at 19-20.

As discussed in detail above, the ALJ rejected the opinions of Dr. Jackson and supported her determinations with legally sufficient reasons. Therefore, the hypothetical presented to the vocational expert, which matches the residual functional capacity in the ALJ's decision, was not lacking any additional limitations and the ALJ did not error in relying on the vocational expert's testimony.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED April 21, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE